Santry, J.
On the afternoon of May 28, 1949,' the appellant Masten, who was then of the age of fifteen years and nine months, was hunting crows with a companion of about his own age in a woodlot owned by his grandfather. Each boy was armed with a .22 calibre rifle loaded with long rifle, hollow point bullets. As Masten and his companion were returning home they came upon a small pond. This pond was controlled by a dam about thirty-five feet long, built of logs and earth. The upper face of the dam sloped down to the water and the top of the dam was three or four feet above the surface of the pond. On the top of the dam there stood a peeled pole about eleven feet high.
*253 As Hasten and his companion approached the pond they observed on the sloping surface of the dam between the pole and the pond, two twelve-year-old boys who were fishing. These boys were Donald Cole and Donald Blanchard. Without being observed by the two fishermen, Hasten and Ms companion passed around the end of the pond and walked through the woods to a position where they were concealed in the underbrush, but could look across an arm of the pond toward the dam and the two boys who were fishing. Hasten and his companion were about ten feet from the edge of the water and about seventy-five or eighty feet from the fishermen. From where they sat the ground sloped down to the edge of the pond, and they were concealed from the fishermen by the branches of small trees growing on the bank. After watching the boys fishing for a short time, Hasten said he was going to shoot at the pole to scare the boys. His companion warned him not to do so because he might hit one of them. Nevertheless, Hasten lay prone on the ground, aimed his rifle through the brush and fired. From where he lay the fishermen were in front of and directly in line with the pole. Hasten testified that he could not see the boys from where he lay and aimed at a knot on the pole about two feet below the top.
Immediately after the shot was fired a shout was heard from the dam. Hasten and his companion ran in different directions, and the companion, looking back, saw the Cole boy lying on the dam. The bullet passed through Cole’s temple and brain and caused his death on the following day. The only explanation given for the accident was that the bullet was deflected by striking a branch on a bush in the underbrush from where the shot was fired.
Hasten was experienced in the use of firearms. He had hunted and engaged in target practice for two years. He had received instructions in the use of arms and had been warned by Ms grandfather never to shoot toward a human body.
The appellant was adjudged guilty of juvenile delinquency by the Children’s Court after a trial on the ground that his act, if committed by an adult, would constitute manslaughter, second degree. (Penal Law, § 1052, subd. 3.) He was committed to the State Agricultural and Industrial School at Industry, New York, for an indefinite period. The validity of the conviction depends on whether his act constituted culpable negligence. Negligence is culpable when it is of such a character that it involves disregard of the consequences which may arise from *254 the act and indifference to the rights of others. (People v. Angelo, 246 N. Y. 451.) The facts are not in dispute. The court below found that under the circumstances the acts of the appellant constituted culpable negligence. The facts are sufficient to support the judgment. The Judge of the Children’s Court was vested with the authority to determine both the issues of fact and the questions of law. (Children’s Court Act, § 22.)
The suggestion has been advanced that the sentence imposed should be modified by placing the appellant on probation. It is argued that because the boy lacked a proper home influence his future usefulness would be best served if he were not sent to an institution. While in sympathy with any procedure that would seem to indicate the best chance of successfully meeting the problem of rehabilitating this boy, I am reluctant to disturb the judgment of the Children’s Court Judge who imposed the sentence. He heard the case and was in the best position to understand the situation. The appellant had been on probation in his court before. The attitude, the characteristics and the personality of the boy were more clearly before the Children’s Court than before us. With all the facts and circumstances before him, the Judge who heard the case determined that the appellant should have institutional discipline and correction.
We would not be justified in interfering with such determination.
The judgment should be affirmed.